UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case Number:  22-22454-CIV-MARTINEZ**

JUSTTECH, LLC,

       Plaintiff,

v.

KASEYA US LLC,

       Defendant.

_____/

**<u>PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 2

LEGAL STANDARD.............................................................................................. 4

ARGUMENT ........................................................................................................... 5

I.     Count I (Gross Negligence) States a Claim Because the EULA Allows for
Claims of Gross Negligence and JustTech Alleges Facts Showing That
Defendant Consciously Disregarded the Consequences of Dangerous
Software Vulnerabilities ................................................................................ 5

     A.     JustTech Alleges Negligence—Not Barred by the Independent
Tort Doctrine.................................................................................... 5

     B.     JustTech Alleges Gross Negligence—Allowed Under the EULA ............. 9

II.     Counts II and III (Negligent Misrepresentations) State Claims Because
JustTech Alleges Reliance on Specific Statements About the Safety and
Security of Software and Restitution Payments, Respectively............................ 10

III.     Count IV (Promissory Estoppel) States a Claim Because JustTech Alleges
Reliance on Repeated Promises of Direct Restitution Payments by and
Through Defendant's "Kaseya Cares 2021" Program ......................................... 12

IV.     Count V (FDUTPA) States a Claim Because JustTech Alleges
Misrepresentations in Trade and Actual Damages ............................................... 14

V.     The EULA Does Not Bar Claims for Negligent Misrepresentation or
FDUTPA Violations Because Those Claims are Outside its Scope or
Defendant Waived Protections Under the EULA .................................................. 16

CONCLUSION.......................................................................................................... 20

Plaintiff's Response to Defendant's Local Rule 7.1(b) Request for Hearing.............................. 21

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Altenel, Inc. v. Millennium Partners, L.L.C.,*
  947 F. Supp. 2d 1357 (S.D. Fla. 2013) ................................................................... 18

*Arriaga v. Florida Pacific Farms, L.L.C.,*
  305 F.3d 1228 (11th Cir. 2002) ............................................................................. 19

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................ 4, 5

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................ 4, 5

*Brush v. Miami Beach Healthcare Grp. Ltd.,*
  238 F. Supp. 3d 1359 (S.D. Fla. 2017) ..................................................................... 7

*Butler v. Yusem,*
  44 So. 3d 102 (Fla. 2010) ...................................................................................... 11

*California Inst. Arts & Tech., Inc. v. Campus Mgmt. Corp.,*
  2020 WL 1692079 (S.D. Fla. 2020) ....................................................................... 18

*Cariglia v. Southeast Chrylser-Plymouth, Inc.,*
  459 F.2d 994 (5th Cir. 1972) ................................................................................. 10

*Cayenta Canada, Inc. v. Orange Cnty., Fla. Bd. Of Cnty. Comm'rs,*
  2002 WL 34373972 (M.D. Fla. 2002) ..................................................................... 18

*Chiron Recovery Ctr., LLC v. AmeriHealth HMO of New Jersey, Inc.,*
  2017 WL 4390169 (S.D. Fla. 2017) ....................................................................... 14

*Christie v. Royal Caribbean Cruises, Ltd.,*
  497 F. Supp. 3d 1227 (S.D. Fla. 2020) ..................................................................... 7

*Chubb Seguros Chile S.A. v. Freight Logistics Int'l LLC,*
  2022 WL 3704081 (S.D. Fla. Mar. 1, 2022) .............................................................. 5

*City Beverage-Illinois, LLC v. Vital Pharms., Inc.,*
  2021 WL 1854410 (S.D. Fla. May 10, 2021) ............................................................. 8

*Cooper v. Meridian Yachts, Ltd.,*
  575 F.3d 1151 (11th Cir. 2009) ............................................................................. 19

*Cortes v. Honeywell Bldg. Solutions SES Corp.*,
  37 F. Supp. 3d 1260 (S.D. Fla. 2014) ................................................................ 10

*Creative Am. Educ., LLC v. Learning Experience Sys., LLC*,
  2015 WL 2218847 (S.D. Fla. 2015) ............................................................ 18, 19

*Dantzler, Inc. v. PNC Bank, Nat. Ass'n*,
  946 F. Supp. 2d 1344 (S.D. Fla. 2013) .............................................................. 12

*Day v. Taylor*,
  400 F.3d 1272 (11th Cir. 2005) ........................................................................... 8

*Fojtasek v. NCL (Bahamas) Ltd.*,
  613 F. Supp. 2d 1351 (S.D. Fla. 2009) .............................................................. 12

*Fried v. Stiefel Laboratories, Inc.*,
  2012 WL 4364300 (S.D. Fla. 2012) ................................................................... 13

*Galstaldi v. Sunvest Cmty. USA, LLC*,
  637 F. Supp. 2d 1045 (S.D. Fla. 2009) .............................................................. 14

*Hirsch v. Jupiter Golf Club LLC*,
  232 F. Supp. 3d 1243 (S.D. Fla. 2017) ................................................................ 8

*Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*,
  694 So. 2d 74 (Fla. App. 3 Dist. 1997) .............................................................. 19

*In re Brinker Data Incident Litig.*,
  2020 WL 691848 (M.D. Fla. Jan. 27, 2020) ........................................................ 7

*In re Jade Winds Ass'n, Inc.*,
  2019 WL 1386048 (Bankr. S.D. Fla. Mar. 25, 2019) ........................................... 7

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
  2022 WL 1468057 (S.D. Fla. May 10, 2022) ....................................................... 6

*JN Auto Collection, Corp. v. U.S. Sec. Ins. Co.*,
  59 So. 3d 256 (Fla. 3d DCA 2011) .................................................................... 12

*Kinetix Solutions Inc. v. Kaseya US LLC*,
  No. 2021-027208-CA-01 (Miami-Dade Cnty. (FL) Cir. Ct.) ................................. 2

*Ladrillera Santa Fe, S.A. v. Cessna Aircraft Co.*,
  2015 WL 13311285 (M.D. Fla. Apr. 24, 2015) .................................................. 16

*Lamm v. State St. Bank & Trust*,
  749 F.3d 938 (11th Cir. 2014) .................................................................... 6, 7, 8

*Lombardo v. Johnson & Johnson Consumer Co., Inc.*,
    124 F. Supp. 3d 1283 (S.D. Fla. 2015) ................................................................. 14

*McCain v. Florida Power Corp.*,
    593 So. 2d 500 (Fla. 1992) ................................................................................. 6

*Mejia v. Jurich*,
    781 So. 2d 1175 (Fla. App. 3 Dist. 2001) ............................................................ 11

*Office of A.G., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*,
    869 So. 2d 592 (Fla. 1st DCA 2004) .................................................................. 14

*Perez v. Scottsdale Ins. Co.*,
    2020 WL 607145 (S.D. Fla. 2020) ...................................................................... 18

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
    842 So. 2d 773 (Fla. 2003) ............................................................................... 14

*Raymond James Fin. Serv., Inc. v. Saldukas*,
    896 So. 2d 707 (Fla. 2005) ............................................................................... 20

*Rollins, Inc. v. v. Butland*,
    951 So. 2d 860 (Fla. 2d DCA 2006) ............................................................. 15, 16

*Singh v. Royal Caribbean Cruises Ltd.*,
    576 F. Supp. 3d 1166 (S.D. Fla. 2021) ................................................................ 10

*Speaker v. U.S. Dept. HHS CDC & Prevention*,
    623 F.3d 1371 (11th Cir. 2010) ........................................................................... 5

*Tank Tech, Inc. v. Valley Tank Testing, LLC*,
    244 So. 3d 383 (Fla. 2d DCA 2018) .................................................................... 8

*Tiara Condo. Ass'n v. Marsh & McLennan Cos.*,
    110 So. 3d 399 (Fla. 2013) ............................................................................. 7, 8

*Tim Minn, Inc. v. Tim Hortons USA Inc.*,
    2021 WL 4482733 (S.D. Fla. 2021) ..................................................................... 12

*Topp, Inc. v. Uniden Am. Corp.*,
    513 F. Supp. 2d 1345 (S.D. Fla. 2007) ................................................................ 18

*Tyco Safety Prod. Canada, Ltd. v. Abracon Corp.*,
    2008 WL 4753728 (S.D. Fla. 2008) ..................................................................... 18

*Tymar Distrib. LLC v. Mitchell Grp. USA, LLC*,
    558 F. Supp. 3d 1275 (S.D. Fla. 2021) ................................................................ 15

*W.R. Grace & Co. v. Geodata Serv., Inc.*,
    547 So. 2d 919 (Fla. 1989). ................................................................................ 12

*Watershed Treatment Programs, Inc. v. United Healthcare Ins. Co., Inc.*,
    2007 WL 1099124 (S.D. Fla. 2007) ................................................................... 14

*Zarrella v. Pacific Life Ins. Co.*,
    755 F. Supp. 2d 1218 (S.D. Fla. 2010) .............................................................. 18

**Statutes**

Fla. Stat. § 501.201 ....................................................................................................... 14

Fla. Stat. § 501.202 ....................................................................................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 4

Fed. R. Civ. P. 8(a) ....................................................................................................... 5

Fed. R. Civ. P. 8(a)(2) ................................................................................................... 4

Fed. R. Civ. P. 9(b) ...................................................................................................... 14

Local Rule 7.1(b)(2) ...................................................................................................... 21

**Other Authorities**

*R&R adopted by* 2021 WL 4480281 (S.D. Fla. 2021) ................................................. 12

Plaintiff JustTech, LLC, by and through undersigned counsel, hereby files its opposition to defendant Kaseya US LLC's motion to dismiss ("Mot.") (D.E. 15), and states as follows:

## INTRODUCTION

This is a tort action arising out of defendant Kaseya US LLC's gross negligence, false representations, and broken promises surrounding the highly publicized "Kaseya VSA ransomware attack" in the summer of 2021. Compl. (D.E. 1) ¶ 1. The attack exploited vulnerabilities in Kaseya's remote monitoring and management software system used by plaintiff JustTech, LLC and other IT companies to manage, secure, and store electronic data. Kaseya knew about the vulnerabilities, including how they exposed customers to heightened risks of cyberattacks, for months, if not years, before the attack, yet failed to timely patch or warn about them. Ransomware was deployed by and through the vulnerabilities and into JustTech and its downstream clients' computer systems and data. As a result, JustTech (and its clients) suffered property, economic, and other damages. It took months for JustTech to recover and resume operations, with the effects of the attack still lingering today.

JustTech seeks to hold Kaseya liable for damages because Kaseya exercised gross negligence in failing to prevent, discover, timely patch, and warn about the known vulnerabilities (Count I); negligently misrepresented the safety and security of its software system (Count II) and commitments to pay restitution (Count III); broke enforceable promises to compensate JustTech through the "Kaseya Cares 2021" program (Count IV); and, as a result of misrepresentations in the course of trade, violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count V). JustTech more than adequately pleads facts stating plausible claims.

Kaseya attempts to transform this case into one of breach of contract. That way, Kaseya can argue that JustTech's claims are barred by the independent tort doctrine and exculpatory provisions in its standardized end-user license agreement. JustTech, however, brings tort claims—claims that are outside the scope of, or expressly permitted under, that agreement.[1]

Kaseya attempts to play the victim card as well: "None of you wanted this to happen. We love our customers. It pisses me off when we do things to hurt them, especially when it is something like this, where we've fallen victim to criminal acts that are impacting our businesses." Compl. ¶ 71. But that card doesn't work when Kaseya controlled the circumstances that exposed JustTech and other customers and their clients—true victims—to the ransomware attack.

In sum, where there is a wrong there is a remedy—*ubi jus ibi remedium*. Kaseya engaged in wrongful conduct that caused damages. It cannot claim immunity from liability by artificially turning this tort case into a breach of contract case or pointing fingers at others. As such, and because JustTech plausibly alleges claims outside the scope of, and authorized under, Kaseya's end-user license agreement, the Court should deny the motion to dismiss.

## BACKGROUND

JustTech is a managed service provider or "MSP" that provides managed IT, computer network, print, fax, and copy solution services to hundreds of clients in and around the Mid-Atlantic and Southeast regions, catering to small businesses, local governments, and non-profits without in-house IT and security departments. Compl. ¶¶ 11, 19. JustTech's managed IT and computer network services require that JustTech create, process, store, secure, and exchange various forms of electronic data and information. *Id.* ¶ 11. Kaseya, on the other hand, is a global

---

[1] By attempting to turn this case into one of breach of contract, Kaseya could also argue that it did not breach the end-user license agreement and has been excused from performance because of third-party wrongdoing, like Kaseya has done in a related case. *See Kinetix Solutions Inc. v. Kaseya US LLC*, No. 2021-027208-CA-01 (Miami-Dade Cnty. (FL) Cir. Ct.).

technology company that provides enterprise and MSP customers with IT management and security software and services.  *Id.* ¶ 16.  Kaseya's IT management and security software is built for and marketed to MSPs, including JustTech, as safe and effective against cyberattacks.  *Id.* ¶¶ 18-19 ("Small to mid-size businesses deserve powerful security and IT management tools that are efficient, cost-effective, and secure.  Enter Kaseya.").

Because of Kaseya's size, position, knowledge, and experience in the market and representations about its IT management and security software and services, JustTech selected Kaseya for its MSP business.  *Id.* ¶ 17.  Specifically, JustTech licensed and used the Virtual System Administrator ("VSA") software system developed by Kaseya as the "glue" to manage, secure, and store customer data and devices.  *Id.* ¶¶ 2, 13.  In order to use this system, JustTech had to and did disclose its and its clients' data and information to Kaseya, granting Kaseya rights to use same.  *Id.* ¶ 12.  Kaseya was well aware that vulnerabilities in its VSA software exposed MSP customers, like JustTech, and their downstream clients to heightened risks of cyberattacks.  *Id.* ¶¶ 24-25.

On July 2, 2021, JustTech, along with its clients and 50-60 other MSPs, suffered a ransomware attack launched by REvil, a Russian-based criminal operation.  *Id.* ¶¶ 47-48, 56, 58. The attack damaged computers, workstations, networks, and servers, as well as encrypted and corrupted data that rendered it inaccessible.  *Id.* ¶¶ 48-50, 61.  The attack shutdown JustTech operations and led to monetary and other losses.  *Id.* ¶¶ 62-66.  The attack, as Kaseya later admitted and the U.S. government confirmed, traveled through Kaseya's VSA software system.  *Id.* ¶¶ 55, 58.  It was one of the largest ransomware attacks in history.

The attack caused substantial damage because Kaseya failed to timely prevent, discover, patch, or warn about vulnerabilities in its VSA software—vulnerabilities that were "critical" yet "easily detectable," and left JustTech and other MSPs exposed.  *Id.* ¶¶ 47, 59-60.  Kaseya knew or

should have known about the "zero-day" vulnerabilities, especially given internal and external warnings made to Kaseya in the months and years before the ransomware attack and the recent history of related software-intrusion attacks in the industry. *Id*. ¶¶ 35-39, 42-45.  Kaseya also knew or should have known that outsourcing software development work to Belarus, a country with known close ties to Russia, added to the security risks of its software. *Id*. ¶ 46.  Kaseya's failures rise to the level of gross negligence and/or willful misconduct, excluded from any liability protections under Kaseya's standard end-user license agreement ("EULA"). *Id*. ¶¶ 88-93.

Adding insult to injury, Kaseya also failed to make good on emphatic and repeated promises to provide millions of dollars in "direct financial assistance" and "restitution" to impacted MSPs like JustTech as part of Kaseya's "Kaseya Cares 2021" program. *Id*. ¶¶ 71-72.  Kaseya did so not on the basis of any legal defense, including provisions in its license agreement that it now attempts to rely on, but because it didn't have the money. *Id*. ¶ 75.  At the same time, Kaseya acknowledged that JustTech was one of its MSP customers most impacted by the ransomware attack—to the tune of seven figures. *Id*.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court will grant a motion to dismiss if the complaint fails to state a claim for which relief can be granted.  To survive dismissal, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Moreover, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a complaint need not contain "detailed factual allegations," it must allege enough facts "to raise a right to relief above the speculative level," or "to raise a reasonable expectation that

discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 555-56.  Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. at 556.  And, at this stage, the Court "accepts the factual allegations in the complaint as true and construes them in the light most favorable to plaintiff." *Speaker v. U.S. Dept. HHS CDC & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

## ARGUMENT

Accepting the well-pleaded allegations in the complaint as true and drawing reasonable inferences from them, JustTech satisfies Rule 8(a) and the *Iqbal* pleading standards to state claims for gross negligence, negligent misrepresentation, promissory estoppel, and FDUTPA violations. Neither the independent tort doctrine nor the EULA bar these claims.

**I.      Count I (Gross Negligence) States a Claim Because the EULA Allows for Claims of Gross Negligence and JustTech Alleges Facts Showing That Defendant Consciously Disregarded the Consequences of Dangerous Software Vulnerabilities**

To state a claim for gross negligence, a plaintiff must allege the elements of negligence— duty, breach, causation, and damages—plus "(1) the existence of a composite of circumstances which, together, constitute an imminent or clear and present danger amounting to more than the normal and usual peril; (2) a showing of chargeable knowledge or awareness of the imminent danger; and (3) an act of omission occurring in a manner which evinces a conscious disregard of the consequences." *Chubb Seguros Chile S.A. v. Freight Logistics Int'l LLC*, 2022 WL 3704081, at *3 (S.D. Fla. Mar. 1, 2022) (Martinez, J.) (citing Florida law).

**A.      JustTech Alleges Negligence—Not Barred by the Independent Tort Doctrine**

Preliminarily, JustTech alleges that defendant engaged in ordinary negligence.  *See* Compl. ¶¶ 79-87.  It owed a duty to JustTech to act carefully and exercise reasonable care arising from

5

providing IT management and security software and services, as well as engaging in acts and omissions that placed JustTech in a "foreseeable zone of risk." *McCain v. Florida Power Corp.*, 593 So. 2d 500, 503 n.2 (Fla. 1992). *See e.g. Lamm v. State St. Bank & Trust*, 749 F.3d 938, 947 (11th Cir. 2014) ("Florida [ ] recognizes that a legal duty [arises] whenever a human endeavor creates a generalized and foreseeable risk of harming others.") (quoting *McCain*, *supra* at 503). For years, defendant knew of and appreciated the risks of cyberattacks on its MSP customers by and through its software and services. Compl. ¶¶ 81-83. Nonetheless, defendant breached its duty to JustTech by failing to prevent, discover, and timely patch vulnerabilities in its software, as well as warn JustTech about the vulnerabilities. *Id*. ¶ 84. The breach exposed JustTech, its clients, and other MSPs, to the ransomware attack, resulting in monetary and property damages. *Id*. ¶¶ 86-87.

Defendant contends that the "independent tort doctrine" bars any claim for negligence because "JustTech alleges only that Kaseya owed it a contractual duty." Mot. at 7-8. Not true. JustTech alleges that defendant's duties to JustTech arise out of the contractual relationship between the parties (*see* Compl. ¶ 80) as well as defendant's acts and omissions that made risk of harm to JustTech foreseeable (*see* Compl. ¶¶ 81-83). In particular, JustTech disclosed its and its clients' electronic data and information to defendant, and granted defendant license and other rights to use same, in order to use defendant's software and services. *See* Compl. ¶ 12. As such, defendant had an extra-contractual duty to protect this data and information.

Courts in similar circumstances, especially involving, like here, the storage, management, and use of electronic data, have recognized legal duties owed that can give rise to negligence and other tort claims. *See e.g. In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2022 WL 1468057, at *24 (S.D. Fla. May 10, 2022) (reasoning duty owed under Florida undertaker and foreseeable-zone-of-risk doctrines) (citing cases); *Brush v. Miami Beach Healthcare Grp. Ltd.*,

6

238 F. Supp. 3d 1359, 1365 (S.D. Fla. 2017) (citing cases); *In re Brinker Data Incident Litig.*, 2020 WL 691848, at *7 (M.D. Fla. Jan. 27, 2020) (holding duty owed where defendant was aware of other data breaches involving similar intrusions to point-of-sale systems).  For these reasons, JustTech has alleged more than a contractual duty owed such that the independent tort doctrine does not bar its negligence, and hence gross negligence, claim.

Moreover, the independent tort doctrine is no bar because the parties' contract allows for a gross negligence claim.  The doctrine, which is designed "to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort," *Tiara Condo. Ass'n v. Marsh & McLennan Cos.,* 110 So. 3d 399, 402 (Fla. 2013) (quotations omitted), does not apply where the contract does not allocate the losses and allows for recovery through tort action.  *See Lamm*, 749 F.3d at 947 (reasoning under *Tiara* that "where a breach of contract is combined with some other conduct amounting to an independent tort, the breach can be considered negligence," particularly where the contract "specifically left open the possibility that [defendant] could be liable for losses caused by its negligence") (quotations and citations omitted); *In re Jade Winds Ass'n, Inc.*, 2019 WL 1386048, at *3-4 (Bankr. S.D. Fla. Mar. 25, 2019) (rejecting application of independent tort doctrine to bar gross negligence claim where defendant "created a foreseeable zone of risk" and contract "contemplates tort causes of action by expressly excluding gross negligence claims from the provision limiting the Defendant's liability") (citing *Tiara* and *Lamm*).  Such is the case here.[2]

---

[2] It is far from certain whether the independent tort doctrine remains good law following *Tiara*'s limitation of the economic loss doctrine to products liability cases.  The doctrine was discussed in the concurrence, not majority, portion of that decision, and courts in the Eleventh Circuit have split on the doctrine's viability. *See Christie v. Royal Caribbean Cruises, Ltd*. 497 F. Supp. 3d 1227, 1232 (S.D. Fla. 2020).  This Court need not weigh into the matter for the reasons discussed herein, as well as the fact that JustTech has alleged property and other damages, which, as even defendant recognizes, takes the independent tort doctrine out of play.  *See* Mot. at 7 ("When the only claimed harm is economic loss (as opposed to bodily injury or

The EULA is a limited-scope contract, obligating defendant only to license software and provide support, so long as the licensee pays monthly subscription fees.  *See* Compl. ¶¶ 14-15 and n.2; Mot. at Ex. 1, §§ 2 & 8.[3]  The EULA limits defendant's liability within the limited scope of the contract.  *See id.* at § 15.  But for claims outside the scope—here, all the claims in the complaint—the EULA and its limitations do not apply or allocate losses (*see Tiara* and *Lamm*), including losses on account of gross negligence or willful misconduct with respect to licensee's and its user's electronic data.

Defendant acknowledges this carve out in the middle of Section 7 ("Customer Data"). There, the EULA expressly provides that defendant may be sued for "gross negligence or willful misconduct … for the unauthorized access to, alteration of, or deletion, correction, destruction, corruption, damage, loss or failure to secure or store Customer Data."  Section 7 cannot be read out of the EULA simply because Section 15 ("Limitation of Liability") purports to limit defendant's liability for other claims.  *See e.g. City Beverage-Illinois, LLC v. Vital Pharms., Inc.*, 2021 WL 1854410, at *3 (S.D. Fla. May 10, 2021) (discussing canons of construction so as to not render provisions in contract "meaningless or useless") (citing Florida law); *Hirsch v. Jupiter Golf Club LLC*, 232 F. Supp. 3d 1243, 1253-54 (S.D. Fla. 2017) (same).  Thus, the independent tort doctrine does not bar the negligence, and hence gross negligence, claim.

---

property damage) …) (citing *Tank Tech, Inc. v. Valley Tank Testing, LLC*, 244 So. 3d 383, 393 (Fla. 2d DCA 2018)).

[3] Unless otherwise indicated, all section references refer to the EULA, which the complaint incorporates by reference.  The complaint did not, however, use, cite to, or incorporate by reference any quote or pricing for services, yet defendant used a quote and pricing in its motion to dismiss.  The Court should not consider that information.  *See* Mot. at 4 n.2 (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)), 17.

### B.     JustTech Alleges Gross Negligence—Allowed Under the EULA

Secondarily, JustTech alleges that defendant engaged in gross negligence—a claim expressly allowed under the EULA.  *See* Compl. ¶¶ 79-87.  Defendant argues, however, that JustTech "fails to plead any facts that show Kaseya had a conscious disregard of 'a clear and present danger.'"  Mot. at 8-9.  To the contrary, the complaint is replete with alleged facts showing that defendant consciously, willfully, or at least recklessly, disregarded the consequences of dangerous software vulnerabilities.  Defendant knew of the software vulnerabilities months, if not years, before the ransomware attack, as well as how their operations in a country aligned with Russia created risks of vulnerabilities.  *See* Compl. ¶¶ 35-37, 42-46.  Defendant was told the vulnerabilities could harm numerous customers including those in sensitive industries.  *Id.* ¶ 37.  Others reported that the vulnerabilities were "critical" and "severe," yet "low attack complexity," not "sophisticated," "easily detectable," and "should have been addressed earlier."  *Id.* ¶ 59.  Defendant knew these vulnerabilities could and did lead to cyberattacks—against itself and other technology companies—including major attacks less than a year before the ransomware attack.  *Id.* ¶¶ 38-39, 43.  Still, defendant failed to prevent, discover, and timely patch the vulnerabilities, or warn JustTech (or other MSPs) about them.  *Id.* ¶¶ 47, 60, 92-93.

While defendant points out apparent contradictory allegations that show defendant "acted diligently," between April 6, 2021 and the July 2, 2021 ransomware attack, to "actively patch and fix the vulnerabilities," *see* Mot. at 8-9, the argument begs the factual question how an 87-day delay reflects the opposite of gross negligence.  It does not, especially since defendant was warned that the vulnerabilities were of the "zero-day" nature, meaning hackers could exploit them immediately.  Compl. ¶ 37.  Tellingly, when defendant argues that the complaint contains contradictory allegations, defendant buries allegations on its own delay in ellipsis.  *See* Mot. at 8

9

(quoting Compl. ¶ 40 but omitting ", at least early on.  But progress stalled on patching the vulnerabilities (and additional ones discovered ruing Kaseya/DIVD's work),").  Regardless, it should be a triable issue of fact whether defendant was ordinarily or grossly negligent.  *See Cortes v. Honeywell Bldg. Solutions SES Corp.*, 37 F. Supp. 3d 1260, 1271 (S.D. Fla. 2014) (citing *Cariglia v. Southeast Chrysler-Plymouth, Inc.*, 459 F.2d 994, 996 (5th Cir. 1972)).

Accordingly, JustTech has plausibly alleged a claim for gross negligence.

## II.  Counts II and III (Negligent Misrepresentations) State Claims Because JustTech Alleges Reliance on Specific Statements About the Safety and Security of Software and Restitution Payments, Respectively

To state a claim for negligent misrepresentation, a plaintiff must allege "(1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation." *Singh v. Royal Caribbean Cruises Ltd.,* 576 F. Supp. 3d 1166, 1182–83 (S.D. Fla. 2021) (Martinez, J.) (quotations and citations to Florida law omitted).

JustTech plausibly alleges negligent misrepresentation.  The company alleges that defendant misrepresented the safety and effectiveness of its software and services (Count II) and promises to pay restitution (Count III). *See* Compl. ¶¶ 95-96, 104-05.  The company further alleges that defendant made these misrepresentations with direct or constructive knowledge of falsity, or without knowledge of truth or falsity. *Id*. ¶¶ 97-98, 106-07.  Finally, the company alleges that defendant intended JustTech to act on the misrepresentations for commercial gain and image, which JustTech did (justifiably and detrimentally) because of defendant's name, reputation, knowledge, and size in the IT management and security market. *Id*. ¶¶ 99-102, 108-11.  The

complaint's allegations are sufficiently detailed to plausibly state claims for negligent misrepresentation.

Defendant challenges only the reliance element of the claims. It contends that JustTech cannot meet this element because (i) the restitution-payment representations were "vague" and "forward looking," and (ii) both sets of representations were superseded or contradicted by two provisions in the EULA. *See* Mot. at 9-13.

On the first point, the restitution-payment representations were clear enough for JustTech to justifiably rely on them. They contained the who (Kaseya and its impacted 50-60 MSP customers), the what ("millions" in "direct financial assistance" and "restitution"), the when (after the attack), the why (to help "customers who have suffered" from the attack), and the where/how (through the "Kaseya Cares 2021" program[4]). Compl. ¶¶ 71-72, 74. The representations did not need to address all conceivable details; nor did JustTech need to "investigate every piece of information furnished." *See Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) ("As to negligent misrepresentation claims, although justifiable reliance on the misrepresentation is required as an element of the claim, justifiable reliance on a representation is not the same thing as failure to exercise due diligence."). And contrary to defendant's position, the "forward looking" statements to pay in the future are actionable because defendant had "superior knowledge of the subject of the statement" and JustTech alleged that defendant "knew or should have known" of their falsity. *See Mejia v. Jurich*, 781 So. 2d 1175, 1177-78 (Fla. App. 3 Dist. 2001) (upholding fraudulent inducement claim based on pre-contract representations as to price and quality). *See also* Compl. ¶¶ 75-76, 107. In any event, questions about justifiable reliance are more properly decided following discovery. *See Fojtasek v. NCL (Bahamas) Ltd.,* 613 F. Supp. 2d 1351, 1355–56 (S.D.

---

[4] *https://www.kaseya.com/kaseyacares/* (financial support program to MSP customers impacted by Covid-19, ransomware attacks, and natural disasters).

Fla. 2009) (denying motion to dismiss negligent misrepresentation claim and holding that justifiable reliance element more appropriately decided after discovery). *See also Tim Minn, Inc. v. Tim Hortons USA Inc.*, 2021 WL 4482733, at *14 (S.D. Fla. 2021) ("[Q]uestions of due diligence often must be resolved by the trier of fact") (quotation and citation omitted), *R&R adopted by* 2021 WL 4480281 (S.D. Fla. 2021); *Dantzler, Inc. v. PNC Bank, Nat. Ass'n*, 946 F. Supp. 2d 1344, 1365-67 (S.D. Fla. 2013) (denying summary judgment on misrepresentation claims where fact issues remain on justifiable reliance).

On the second point, the EULA is no bar to the claims. The Section 16.10 integration and Section 15 limitation of liability clauses do not apply to the pre- or post-contract representations, as discussed below.

Accordingly, JustTech has plausibly alleged claims for negligent misrepresentation.

### III. Count IV (Promissory Estoppel) States a Claim Because JustTech Alleges Reliance on Repeated Promises of Direct Restitution Payments by and Through Defendant's "Kaseya Cares 2021" Program

To state a claim for promissory estoppel, a plaintiff must allege "(1) the promisor made a representation as to a material fact that is contrary to a later-asserted position; (2) the promisee reasonably relied on the representation; and (3) the promisee changed [its] position to [its] detriment based on the representation." *JN Auto Collection, Corp. v. U.S. Sec. Ins. Co.*, 59 So. 3d 256, 258 (Fla. 3d DCA 2011). *See W.R. Grace & Co. v. Geodata Serv., Inc.*, 547 So. 2d 919, 924 (Fla. 1989).

JustTech plausibly alleges promissory estoppel. Defendant promised that it would provide restitution to impacted MSPs like JustTech for its financial damages. Compl. ¶¶ 71-72, 74, 104. Defendant reasonably expected MSPs to act or forbear on the promises because they were made more than once, immediately following the ransomware attack, in non-conditional emphatic terms,

and by a global sophisticated technology company worried about its customers and image.  *Id*.
¶¶ 70, 108.  JustTech acted and forbeared on the promises by spending money on recovery efforts,
telling clients they would not be charged, and delaying action against defendant.  *Id*. ¶¶ 73-74,
109.

Here, defendant falls back on an earlier argument that its promises to pay restitution were
too vague and reliance on them unreasonable.  *See* Mot. at 14-18.

First, the promises were sufficiently clear for the reasons discussed above.  Defendant cites
*Fried v. Stiefel Laboratories, Inc.*, 2012 WL 4364300 (S.D. Fla. 2012), but that case is
distinguishable.  In *Fried*, the plaintiff sued defendants for, among other things, promissory
estoppel following "conversations" to "compensate[e] Fried for his 'loss'" after defendants
apparently misled plaintiff on the value of stock shares he had sold.  *Id*. at *10.  Judge King
dismissed the claim:  injustice could be avoided through plaintiff's other claims in the lawsuit, and
under the second element, the "conversations were too indefinite as to induce reliance."  *Id*.  Those
conversations consisted of defendants' "endeavor to come up with something that will make you
happy" and various "possible ways to resolve Plaintiff's concern," none of which was agreed upon.
*Id*. at *3.  Unlike in *Fried*, defendant Kaseya was emphatic in its repeated promises to provide
"restitution:"  "We will take care of it financially."  *E.g.* Compl. ¶ 72.  Moreover, defendant was
clear in how the restitution would work, *i.e.,* through its "Kaseya Cares 2021" program.  *Id*. ¶ 71.

Second, reliance on the promises to pay restitution was reasonable.  Based on the content,
context, and timing of the promises—within days of the attack—JustTech spent time and money
on recovery efforts, including new hard drives and software and outside IT and vendor resources,
and told clients they would not be charged.  Compl. ¶¶ 62-63, 65, 73-74.  Although defendant
doubts that JustTech spent this time and money on recovery because of defendant's promises, *see*

Mot. at 17-18, doubts—in the context of both promissory estoppel and negligent misrepresentation claims—should be resolved in JustTech's favor at this stage:

> A plaintiff's reliance on a promise must be reasonable to succeed on the merits of a promissory estoppel or negligent misrepresentation claim under Florida law. …. Any determination about if, as a matter of law, it was reasonable for Chiron to rely on the representations from Magellan is premature at this procedural stage.

*Chiron Recovery Ctr., LLC v. AmeriHealth HMO of New Jersey, Inc.*, 2017 WL 4390169, at *4 (S.D. Fla. 2017) (citations omitted). *See Watershed Treatment Programs, Inc. v. United Healthcare Ins. Co., Inc.*, 2007 WL 1099124, at *4 (S.D. Fla. 2007) ("what constitutes reasonable inducement is improper at the motion to dismiss stage").

Accordingly, JustTech has plausibly alleged a claim for promissory estoppel.

### IV.   Count V (FDUTPA) States a Claim Because JustTech Alleges Misrepresentations in Trade and Actual Damages

To state a claim for violating FDUTPA, a plaintiff must allege "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Lombardo v. Johnson & Johnson Consumer Co., Inc.*, 124 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015). *See* Fla. Stat. § 501.201, *et seq*. "[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Lombardo*, 124 F. Supp. 3d at 1287 (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)). The provisions of FDUTPA are "construed liberally." Fla. Stat. § 501.202. Neither fraud nor reliance on deceptive representations need be shown, and heightened pleading standards under Rule 9(b) need not be met. *E.g. Galstaldi v. Sunvest Cmty. USA, LLC*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009) ("[t]he requirements of Rule 9(b) do not apply to claims under the FDUTPA"); *Office of A.G., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. 1st DCA 2004) ("When addressing a deceptive or unfair trade practice claim, the issue is not whether the plaintiff

actually relied on the alleged practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.") (citation omitted).

JustTech plausibly alleges a FDUTPA claim.  Defendant engaged in deceptive acts and unfair practices in the course of trade or commerce concerning false statements on the safety and effectiveness of its software and services and/or offers to pay restitution to its customers.  This caused actual damages in amounts to be determined at trial.  *See* Compl. ¶¶ 118-20.

Defendant argues that the FDUTPA claim based on (i) offerings to pay restitution fail to state a claim for lack of "actual damages" and (ii) statements about its software and services are barred by the EULA.  *See* Mot. at 19-20.

First, JustTech alleges actual damages for the FDUTPA/restitution claim.  *See* Compl. ¶¶ 73-74, 120.  Defendant contends these damages are consequential damages and that "actual damages" under the statute are "strictly construed as the difference between the market value of a service received and the market value of the service promised."  Mot. at 20 (citing *Rollins, Inc. v. v. Butland,* 951 So. 2d 860, 869 (Fla. 2d DCA 2006)).  But the Florida Supreme Court has not adopted any definition of "actual damages" under FDUTPA.  And in FDUTPA cases involving torts as opposed to transactions or contracts, the types of recoverable damages go beyond defendant's benefit-of-the-bargain measure.  *See Tymar Distrib. LLC v. Mitchell Grp. USA, LLC*, 558 F. Supp. 3d 1275, 1285 (S.D. Fla. 2021) ("And in claims with no underlying transaction, such as business torts, lost profits are often directly caused by a defendant's wrongful act and recoverable simply as compensatory damages."; under Florida law, "actual and indirect pecuniary loss … value of time, actual expenses" are included in the definition of "compensatory damages") (quotations and citation omitted).

15

Here, JustTech has alleged recoverable damages in the form of monetary losses and actual expenses incurred following defendant's failure to make good on restitution payments. Even under the *Rollins* benefit-of-the-bargain measure, JustTech has alleged a difference between what defendant offered (full restitution) versus what defendant provided (closer to nothing). FDUTPA requires no more at the pleading stage. *See Ladrillera Santa Fe, S.A. v. Cessna Aircraft Co.*, 2015 WL 13311285, at *5 (M.D. Fla. Apr. 24, 2015) (denying motion to dismiss FDUTPA claim and reserving "the question of whether these costs are actual damages" until after discovery).

Second, the EULA is no bar to the FDUTPA/software-services claim. The Section 16.10 integration clause does not apply to the pre-contract statements made by defendant about the safety and security of its software and services, as discussed below.

Accordingly, JustTech has plausibly alleged a claim for violating FDUTPA.

**V.    The EULA Does Not Bar Claims for Negligent Misrepresentation or FDUTPA Violations Because Those Claims are Outside its Scope or Defendant Waived Protections Under the EULA**

Again, defendant argues that the EULA bars JustTech's claims for negligent misrepresentations (Counts II and III) and related FDUTPA violations (Count V). Defendant, however, fails to develop this argument by showing how and where this limited-scope contract governs, *i.e.,* "contemplate[s] and explain[s]" or "relate[s] to (and here, contradict[s])," *see* Mot. at 10 and 12, the claims for negligent misrepresentation or FDUTPA violations, except for pointing to two provisions.

Defendant argues that the Section 16.10 integration clause negates pre-contract representations about the safety and security of its software and services, and the Section 15 limitation of liability clause negates post-contract representations about restitution payments to MSP customers. *See* Mot. at 4, 11, 13. For reference, the two clauses state as follows:

16

15. <u>Limitation of Liability</u>. NOTWITHSTANDING ANYTHING ELSE IN THIS
AGREEMENT OR OTHERWISE, AND EXCEPT FOR BODILY INJURY CAUSED
BY GROSS NEGLIGENCE OR WILLFUL MISCONDUCT BY KASEYA'S
EMPLOYEES, AND TO THE FULLEST EXTENT PERMITTED UNDER
APPLICABLE LAW, KASEYA AND ITS SUPPLIERS AND LICENSORS SHALL
NOT BE LIABLE OR OBLIGATED WITH RESPECT TO THE SUBJECT MATTER
OF THIS AGREEMENT (INCLUDING WITHOUT LIMITATION
INDEMNIFICATION OBLIGATIONS) OR UNDER ANY CONTRACT,
NEGLIGENCE, STRICT LIABILITY OR OTHER LEGAL OR EQUITABLE
THEORY (I) FOR ANY AMOUNTS IN EXCESS IN THE AGGREGATE OF THE
FEES PAID TO IT BY LICENSEE FOR THE SOFTWARE LICENSED HEREUNDER
DURING THE SIX MONTH PERIOD PRIOR TO THE CAUSE OF ACTION, (II) FOR
ANY COST OF PROCUREMENT OF SUBSTITUTE GOODS, TECHNOLOGY,
SERVICES OR RIGHTS, OR (III) FOR ANY INCIDENTAL, INDIRECT, SPECIAL,
PUNITIVE OR CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT
LIMITATION, LOSS OF PROFITS, LOSS OF USE OR DATA, DAMAGE TO
SYSTEMS OR EQUIPMENT, BUSINESS INTERRUPTION OR COST OF COVER)
IN CONNECTION WITH OR ARISING OUT OF THE DELIVERY, PERFORMANCE
OR USE OF THE SOFTWARE, DOCUMENTATION, ANY OTHER MATERIALS
PROVIDED BY KASEYA OR OTHER SERVICES PERFORMED BY KASEYA,
WHETHER ALLEGED AS A BREACH OF CONTRACT OR TORTIOUS CONDUCT,
INCLUDING NEGLIGENCE AND STRICT LIABILITY, EVEN IF KASEYA HAS
BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES). YOU
ACKNOWLEDGE AND AGREE THAT KASEYA WOULD NOT ENTER INTO THIS
AGREEMENT UNLESS IT COULD RELY ON THE LIMITATIONS DESCRIBED IN
THIS PARAGRAPH.

***

16.10 <u>Entire Agreement; Severability</u>. Subject to the other terms and conditions of this
Agreement, this Agreement is the entire agreement between Kaseya and Licensee
regarding Licensee's use of the Software, and supersedes and replaces any previous
communications, representations, or agreements, or Licensee's additional or inconsistent
terms, whether oral or written. In the event any provision of this Agreement is held
invalid or unenforceable the remainder of the Agreement will remain enforceable and
unaffected thereby. This Agreement may not be modified nor any rights under it waived,
in whole or in part, except in writing, signed by both parties.

Mot. at Ex. 1, §§ 15 & 16.10.

Defendant's argument is misplaced because the integration clause "supersedes and replaces

any previous communications, representations, or agreements" on "Licensee's use of the

Software." It does not supersede and replace what defendant represented pre-contract about the

17

safety and effectiveness of its software or services against cyberattacks—what defendant calls the "quality of the product," *see* Mot. at 10. *See California Inst. Arts & Tech., Inc. v. Campus Mgmt. Corp.*, 2020 WL 1692079 (S.D. Fla. 2020) (holding merger clause no bar to fraud claim based on pre-contract representations as to software "capabilities and functionalities" where contract only "sets out what software and services" would be provided). Further, the limitation of liability clause applies to liability "with respect to the subject matter of this agreement," which means the limited-use software license and support. It does not apply to what defendant represented post-contract about restitution payments to MSP customers. Thus, these EULA clauses do not bar the claims for negligent misrepresentation or related FDUTPA violations.

For the reason above, defendant's cited authorities for its EULA-bar argument are inapposite. In each case, the underlying contract specifically addressed or contradicted the basis for the misrepresentation claims. *See e.g. Perez v. Scottsdale Ins.* Co., 2020 WL 607145, at *3 (S.D. Fla. 2020) (insurance policy "exclusions and exceptions"); *Creative Am. Educ., LLC v. Learning Experience Sys.*, LLC, 2015 WL 2218847, at *5 (S.D. Fla. 2015) ("12.16 Disclaimer of Representations"); *Altenel, Inc. v. Millennium Partners, L.L.C.*, 947 F. Supp. 1357, 1371 (S.D. Fla. 2013) ("terms of the contracts here are contrary to the premise of the fraud"); *Zarrella v. Pacific Life Ins. Co.*, 755 F. Supp. 2d 1218, 1225 (S.D. Fla. 2010) (contract "expressly disclaim[s] any promises or future tax benefits"); *Tyco Safety Prod. Canada, Ltd. v. Abracon Corp.*, 2008 WL 4753728, at *3 (S.D. Fla. 2008) ("alleged failure to provide compliant resonators, which is the subject of the contractual breach"); *Topp, Inc. v. Uniden Am. Corp.*, 513 F. Supp. 2d 1345, 1350 (S.D. Fla. 2007) ("alleged misrepresentations or inducements are fully addressed and incorporated into the written contract"); *Cayenta Canada, Inc. v. Orange Cnty., Fla. Bd. Of Cnty. Comm'rs*, 2002 WL 34373972, at *2-3 (M.D. Fla. 2002) ("quality," "characteristics," and "functionality" of

18

software system); *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So. 2d 74, 78 (Fla. App. 3 Dist. 1997) (performance of contract).  At a minimum, the lack of specificity of the EULA vis-à-vis the claims at issue precludes dismissal as a matter of law.  *See e.g. Creative Am. Educ.*, 2015 WL 2218847, at *7 ("A specific disclaimer brings the instant case in line with *Garcia* and other cases that preclude misrepresentation claims that contradict written agreements, and a lack of specificity would cause this issue to be decided by a trier of fact.").

Moreover, the Section 15 limitation-of-liability clause has additional problems.  First, it is less than clear.  Consider these phrases:

- "Notwithstanding anything else in this agreement or otherwise"—what does "otherwise" include?

- "except for bodily injury caused by gross negligence or willful misconduct"—does "bodily injury" modify both categories?

- "shall not be liable or obligated with respect to the subject matter of this agreement … or under any contract, negligence, strict liability or other legal or equitable theory"—does the limitation on liability reach more than the "subject matter of this agreement"?

- "whether alleged as a breach of contract or tortious conduct, including negligence and strict liability, even if Kaseya has been advised of the possibility of such damages"—does the phrase mean something different than the earlier phrase on types of legal claims, and is there an opening parenthetical mark missing?

Florida law disfavors exculpatory clauses, *see Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1166-67 (11th Cir. 2009) (citing cases), and Section 15's confusing language should be construed against defendant as the drafter, *see Arriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228, 1247-48 (11th Cir. 2002) (citing Florida law).

Second, defendant waived Section 15 when it made post-contract representations to pay restitution to MSP customers.  At the time of those representations, defendant was aware of Section 15 and its purported protections against restitution payments, yet promised to make those payments

nonetheless.  Defendant then discussed the amount of restitution with JustTech, but never raised any defense to payment other than lack of funds.  Compl. ¶¶ 75, 77.  *See Raymond James Fin. Serv., Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005) ("We have defined 'waiver' as the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right.") (citation omitted).  In short, defendant cannot revert to Section 15's protections now.

## CONCLUSION

WHEREFORE, plaintiff JustTech respectfully requests that the Court deny defendant Kaseya's motion to dismiss.  In the alternative, should the Court grant the motion, JustTech respectfully requests leave to amend.

20

**Plaintiff's Response to Defendant's Local Rule 7.1(b) Request for Hearing**

Defendant sought a hearing on the motion to dismiss without detailing reasons. *See* Local Rule 7.1(b)(2). Plaintiff sees no reason for a hearing because the issues are straightforward applications of tort and contract-interpretation law in the context of a well-pled, factually detailed complaint. Nonetheless, if the Court is inclined to hold a hearing, plaintiff welcomes the opportunity to present oral argument.

Dated: October 31, 2022                     Respectfully submitted,

                                            GORDON REES SCULLY MANSUKHANI, LLP

                                            */s/ Joseph A. Sacher*
                                            Joseph A. Sacher (FBN 174920)
                                            Andrew R. Schindler (FBN 124845)
                                            Miami Tower, Suite 3900
                                            100 SE Second Street
                                            Miami, FL 33131
                                            Tel: 305-428-5339
                                            jsacher@grsm.com
                                            aschindler@grsm.com

                                            Joseph L. Meadows (VA Bar No. 92729) (PHV granted)
                                            1101 King Street, Suite 520
                                            Alexandria, VA  22314
                                            Tel: 703-650-7011
                                            jmeadows@grsm.com

                                            *Counsel for JustTech, LLC*

21